**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

**UNITED STATES OF AMERICA,**

**v.**                                                    **Criminal No. 4:06cr98**

**MARLON PETTAWAY,**

                **Defendant.**

### OPINION AND ORDER

This matter is before the Court on defendant Marlon Pettaway's
("Defendant" or "Pettaway") motion, filed with the assistance of
counsel, seeking a sentence reduction pursuant to Section 404(b)
of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194,
5222 (2018).  ECF No. 77.  The Government filed a brief in
opposition, ECF No. 82, and Defendant filed a reply, ECF No. 83.
After the motion was fully briefed, the Court issued an Order
requesting supplemental filings in light of emerging case law and
apparent deficiencies in the manner in which Defendant's
Guidelines and statutory punishments were calculated at
sentencing.  ECF No. 84.  The Government and Defendant have now
filed their supplemental briefs.  ECF Nos. 87, 89.  For the
reasons set forth in detail below, Defendant's First Step Act
motion is **GRANTED;** however, the reduced sentence imposed by the
Court is significantly longer than the sentence requested by the
defense due to applicable statutory mandatory minimums.

## I. Background

Following a bench trial conducted in January of 2007, Pettaway was convicted of multiple federal felonies associated with a drug trafficking conspiracy, to include Engaging in a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848; Possessing with the Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B); Brandishing a Firearm during Drug Trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and two counts of Use of a Firearm During Drug Trafficking, in violation of 18 U.S.C. § 924(c)(1)(A), (C). ECF No. 78. At sentencing, Pettaway's advisory Guideline range was "life" on the CCE count and several associated counts, plus 57 years consecutive on the § 924(c) counts. Id. The Court sentenced Pettaway to life imprisonment plus 57 years consecutive. ECF No. 37.

Focusing on the § 924(c) consecutive sentence imposed in this case, at the time Pettaway committed his unlawful acts, § 924(c) mandated a five-, seven-, or ten-year minimum sentence for a defendant's first § 924(c) conviction and an enhanced 25-year consecutive mandatory minimum sentence for second or subsequent § 924(c) convictions. See 18 U.S.C. § 924(c)(1)(A), (C). It was well-established at that time that the enhanced 25-year statutory punishment for second and subsequent § 924(c) convictions applied within a single criminal prosecution. See United States v. Camps, 32 F.3d 102, 106-09 (4th Cir. 1994). As part of the First Step

2

Act of 2018, Congress modified the enhanced punishment under § 924(c)(1)(C) by limiting its applicability to recidivist offenders that commit new § 924(c) offenses "<u>after</u> a prior conviction under [§ 924(c)] <u>has become final</u>." First Step Act § 403 (emphasis added); <u>see</u> <u>United States v. Jordan</u>, 952 F.3d 160, 172 (4th Cir. 2020), <u>cert. denied</u>, 141 S. Ct. 1051 (2021). The effect of this recent statutory change eliminated the application of the severe 25-year "stacked" punishment for second and subsequent § 924(c) convictions within a single prosecution for first time § 924(c) offenders.[1]

Here, Pettaway was sentenced to a seven-year consecutive term of imprisonment for his first § 924(c) conviction because the firearm involved in such crime was brandished. Although the "default" punishment for each of Pettaway's second and third § 924(c) "use of a firearm" convictions was five years, Pettaway qualified for the enhanced § 924(c)(1)(C) 25-year consecutive punishment for each of these convictions. Accordingly Pettaway was sentenced to a total of 57 years consecutive on his three § 924(c) counts, the mandatory minimum under § 924(c). Because Pettaway had not previously been convicted of a § 924(c) felony, it is undisputed that his three § 924(c) convictions would require

---

[1] Defendants sentenced under the updated law continue to be subject to the "default" five-, seven-, or ten-year mandatory minimums for each additional § 924(c) conviction within a single prosecution, and these default terms must be served consecutively to each other and to all other counts.

3

a minimum sentence of only 17 years consecutive under current law (7+5+5), rather than 57 years consecutive (7+25+25).

As discussed in greater detail below, the favorable statutory modifications to § 924(c)(1)(C) that were adopted in § 403 of the First Step Act were not made retroactive to criminal defendants, like Pettaway, serving sentences that have been final for many years. First Step Act § 403(b). Pettaway does, however, qualify for discretionary sentencing relief under § 404 of the First Step Act, a section that is retroactively applicable to certain defendants with long-final cocaine base convictions. The critical dispute before this Court is whether the Court has the authority to apply the reduced § 924(c)(1)(C) statutory punishments established by § 403 when it "imposes" a new sentence under § 404 of the First Step Act. For the reasons explained below, and notwithstanding the fact that Pettaway's 57-year consecutive sentence "is undoubtedly severe-perhaps too severe," the Court finds that it "ha[s] no discretion to impose a lesser punishment" on the § 924(c) counts as part of a non-plenary resentencing under § 404 of the First Step Act.[2] Lovely v. United States, 175 F.2d

---

[2] Imposing a new sentence under § 404 appears to come closer to a "plenary" resentencing in the Fourth Circuit than it does in any other circuit, but controlling precedent makes clear that it is not a plenary resentencing. See United States v. Collington, 995 F.3d 347, 356 (4th Cir. 2021) (describing § 403(b) proceedings as "rest[ing] between an initial or plenary sentencing hearing and a limited modification"); United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021) ("[T]he analysis is not intended to constitute a plenary resentencing.").

312, 317 (4th Cir. 1949). Rather, "[a]ny mitigation of the [§ 924(c)] sentence in line with the present views of Congress must . . . be sought at the hands of the Executive where such discretion is lodged," id., or alternatively, through a compassionate release motion, United States v. McCoy, 981 F.3d 271, 286 (4th Cir. 2020).

## II. Eligibility for § 404 Sentencing Relief

The Court begins its analysis of Pettaway's motion by reviewing his eligibility for sentencing relief under § 404 of the First Step Act. Section 404 of the First Step Act is a "remedial" statutory change "intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." United States v. Wirsing, 943 F.3d 175, 176-77 (4th Cir. 2019). Section 404 grants this Court discretion to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 [("FSA")[3]] (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act § 404(b). It is undisputed that § 404 applies retroactively to defendants like Pettaway with long-final sentences; in fact, § 404 specifically

---

[3] Consistent with common practice, the Fair Sentencing Act of 2010 will be referred to herein as the FSA. The First Step Act of 2018, which coincidentally shares the same initials, will be referred to as the First Step Act to avoid confusion.

targets defendants that committed cocaine base offenses many years prior to the passage of the First Step Act.

The threshold question when evaluating a § 404 motion is whether the defendant before the court was convicted of a "covered offense." Here, the parties now agree that at least one of Pettaway's offenses (the cocaine base offense charged in Count Three) is a "covered offense," rendering Pettaway "eligible" for a discretionary sentence reduction under § 404 of the First Step Act. See Wirsing, 943 F.3d at 186 ("All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible to move for relief under that Act."); ECF No. 87, at 1, 8 (conceding Defendant's eligibility). Because Count Three is a covered offense, the "sentencing package doctrine" renders it unnecessary for this Court to decide whether Pettaway's CCE conviction is also a covered offense.[4]

### III. Corrections Relevant to Sentencing

Because Pettaway is eligible for § 404 relief, the Court next considers the controlling statutory punishment and the advisory Guideline range that will guide the Court's determination of whether sentencing relief is appropriate in this case. Before

---

[4] The sentencing package doctrine recognizes that a district court's sentence on multiple counts is typically fashioned based on an interdependent analysis, meaning that when the sentence on one count is vacated or modified, the district court should revisit the appropriate total sentence through a "holistic approach" that may involve imposing a different sentence on other counts. See United States v. Ventura, 864 F.3d 301, 309 (4th Cir. 2017).

addressing the crux of the parties' dispute (the statutory punishment applicable to Defendant's § 924(c) offenses) the Court reviews several corrections and updates relevant to resentencing.

As set forth in the parties' briefs, it is undisputed that this Court should correct two "facial errors" made at Pettaway's original sentencing.  ECF No. 87, at 9-10.  First, while the error did not directly impact the sentence imposed in this case, Pettaway's CCE conviction (Count Two) requires a 20-year mandatory minimum sentence, not a 30-year minimum sentence as erroneously indicated in Pettaway's Presentence Investigation Report ("PSR"). See 21 U.S.C. § 848.[5] Second, the advisory Guideline "grouping analysis" was incorrectly computed in this case, and Pettaway should not have received a 2-level Guideline grouping enhancement. Accordingly, when "imposing" a new sentence, the Court will apply the proper statutory mandatory minimum on the CCE count and will not increase Pettaway's offense level based on an erroneous Guideline "grouping" calculation.

With those agreed facial errors corrected, the Court is required to recalculate the advisory Guideline range.  See United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021) (holding that "in the First Step Act context . . . district courts must correct original Guideline errors and apply intervening case law

---

[5] A 30-year recidivist mandatory minimum applies if a defendant has one or more prior § 848 convictions; however, it is undisputed that Pettaway does not have a prior CCE conviction.

made retroactive to the original sentence"). At the time Pettaway was sentenced, his Guideline calculation was driven by the quantity of narcotics attributed to him, the majority of which involved cocaine base. However, as argued by Pettaway, <u>retroactive</u> drug weight amendments to the Guidelines passed after his sentencing must be applied during the recalculation of the advisory Guideline range, and such amendments benefit Pettaway by reducing his drug-weight base offense level to a point below the minimum Guideline base offense applicable to a CCE conviction. U.S.S.G. §§ 2D1.1, 2D1.5.

Specifically, after application of the retroactive drug weight amendments, the drug quantity attributed to Pettaway corresponds to an offense level 32 on the Guideline drug weight table, and after adding a 4-level CCE enhancement, the drug weight base offense level is level 36. U.S.S.G. § 2D1.5(a)(1). However, because the alternative minimum Guideline base offense level for a CCE conviction is level 38, U.S.S.G. § 2D1.5(a)(2), and the Court must apply "the greater" of the two alternative calculations, Pettaway's properly calculated base offense level is 38. U.S.S.G. § 2D1.5. Such base offense level is increased by two additional levels due to an obstruction of justice enhancement, but Pettaway does not qualify for a Guideline "leadership" enhancement because the CCE Guideline base offense level "already reflects an adjustment for role in the offense." U.S.S.G. § 2D1.5 App. n.1 &

8

Background.  Pettaway's offense level total is therefore level 40, and with a criminal history category of V, his advisory Guideline range on all counts, with the exception of the consecutive § 924(c) firearm counts, is now 360 months to life imprisonment.[6]  As to the three § 924(c) counts, the Guideline range is the applicable statutory mandatory minimum, U.S.S.G. § 2K2.4(b), and as noted above, the determination of the proper § 924(c) statutory minimums is the crux of the legal dispute currently before this Court.

## IV. Mandatory Minimums for the § 924(c) Counts

### A. Effect of a Reduced Statutory Punishment

Prior to analyzing the language of the specific statutory provisions that will control the outcome of Pettaway's motion (i.e., § 403 and § 404 of the First Step Act), it is beneficial to review the "default" rule governing which version of a statute controls when a criminal punishment is modified by Congress.  Some courts conducting a § 404 First Step Act review have recently noted that "present day sentencing law" generally applies whenever a federal Court imposes a sentence.  See, e.g., Babb v. United States, No. CR ELH-04-0190, 2021 WL 2315459, at *15 (D. Md. June 4, 2021).  However, while the applicability of current law reaches

---

[6] The Government asserts that Pettaway's updated offense level total is a level 42, but it appears that the Government has not factored in the retroactive Guideline drug weight amendments.  The Court notes, however, that under either the Government's calculation, or the calculation argued by Defendant and adopted above, the updated advisory Guideline range is the same: 360 months to life.

both Guideline amendments and certain case law, the determination of the controlling statutory punishment is guided by a different default rule. This discrete rule provides that the statute in force at the time the offense was committed typically controls at sentencing. Dorsey v. United States, 567 U.S. 260, 272 (2012). Importantly, the default rule establishing the controlling version of the statute is not judge made; rather, it is dictated by the "savings statute" codified at 1 U.S.C. § 109. "[P]hrased in general terms, [§ 109] provides that a new criminal statute that 'repeal[s]' an older criminal statute [or reduces the punishment under such statute] shall not change the penalties 'incurred' under that older statute 'unless the repealing Act shall so expressly provide.'" Dorsey, 567 U.S. at 272 (third alteration in original) (quoting 1 U.S.C. § 109)); see Lovely, 175 F.2d at 317 (explaining that prior case law setting out "broad principles," such as sentencing being governed by "the law in existence at the time of sentenc[ing]" or that an accused may elect to be sentenced under a new statute that "mitigates punishment," offers "little help" in a case where the court is dealing "not with broad general principles[,] but with the interpretation of definite words in a specific federal statute" (emphasis added)). To be sure, the savings statute is subject to exceptions both because Congress retains the authority to "expressly" grant retroactive effect to a new punishment and because Congress retains the authority to

modify, weaken, or even repeal § 109.  But since the authority to do either rests with Congress, the decision to apply a newly reduced statutory punishment may not be grounded in judicial discretion or a desire to promote sentencing uniformity; instead, an exception must be predicated on Congressional action.  Dorsey, 567 U.S. at 273-74.

While the authority to deviate from the savings statute must derive from Congress, the Supreme Court has taken a somewhat permissive view regarding what is needed to qualify as a Congressional grant of authority.  Specifically, in Dorsey, the Court held that even though the text of the savings statute indicates that Congress must "expressly provide" that reduced statutory punishments apply to pre-Act offenders, Congress can convey its intention to apply a new Act retroactively "either expressly or by implication."  Id. at 274 (emphasis added). Notwithstanding such permissive interpretation, Congress's "implication" must still be identified before a district court may deviate from § 109.

Synthesizing the above, even though current sentencing law is generally applicable when a defendant is sentenced or resentenced, this Court is bound by the statutory penalties in place at the time that a federal offense was committed unless Congress provides express or implied authority to apply a subsequently reduced statutory punishment.  It is not enough that Congress has not

expressly prohibited this Court from applying a reduced punishment in a newly enacted law, but rather, Congress must <u>grant</u> such authority.  As is undisputed in this case, § 404 of the First Step Act reflects Congress's express grant of authority to retroactively apply the FSA's reduced cocaine base statutory penalties to offenses committed before the FSA was enacted.  However, it is disputed whether Congress has similarly granted authority with respect to the amendments § 403 of the First Step Act made to § 924(c)(1)(C).

### B. Fair Sentencing Act of 2010

In addition to the need to begin the First Step Act analysis with a review of the savings statue, it is helpful to review the FSA (passed in 2010) and the case law interpreting the FSA before moving on to the text of the First Step Act (passed in 2018).  As noted above, the FSA reduced the statutory punishments for certain cocaine base offenders, though the text of the FSA did not clearly indicate which defendants would benefit from such newly reduced statutory punishments.  In <u>Dorsey v. United States</u>, the Supreme Court was called on to determine whether Congress had sufficiently expressed its intention to extend the newly reduced FSA punishments to "pipeline" criminal cases—that is, cases where the defendant committed a cocaine base trafficking crime prior to the FSA's effective date (August 3, 2010) but was sentenced <u>after</u> the effective date.  After performing a detailed statute-specific

analysis, the Supreme Court concluded that Congress implicitly expressed its intention to extend the newly reduced FSA cocaine base punishments to "the post-Act sentencing of pre-Act offenders." Dorsey, 567 U.S. at 281. In reaching this conclusion, the Court acknowledged that "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendant's already sentenced." Id. at 280 (emphasis added).

### C. First Step Act Text & Relevant Case Law

Turning to the statutory language of the First Step Act, § 403 and § 404 are both directly relevant to Pettaway's motion, as each section contains a distinct retroactivity provision. Beginning with § 404, the statute provides that, for "covered" cocaine base offenses, the court "may, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."[7] First Step Act § 404(b) (emphasis added). While Dorsey extended the FSA's benefits only to those "pipeline" defendants that had not yet been sentenced at the time the FSA was

---

[7] It is notable, from a statutory interpretation standpoint, that § 404 of the First Step Act references applying the FSA as if it was in force at the time the offense was committed, not at the time the original sentence was imposed, as the § 109 savings statute provides that the statute governing punishment is the statute in force at the time of the criminal conduct. Cf. Dorsey, 567 U.S. at 272 ("Case law . . . makes clear that penalties are 'incurred' under [an] . . . older statute when an offender becomes subject to them, i.e., commits the underlying conduct that makes the offender liable.").

passed, § 404 of the First Step Act is a true "retroactive" amendment because it extends the FSA's benefits to <u>previously sentenced</u> defendants, in effect reaching back to benefit all "covered" offenders, including those sentenced years prior to August 3, 2010.

As applied here, it is undisputed that § 404(b) of the First Step Act authorizes this Court to apply the FSA retroactively and "impose" a new sentence for Pettaway "as if" the FSA was in force at the time he committed his offenses.[8]  However, while the text of § 404(b) clearly renders the FSA retroactively applicable to Pettaway, it does not (1) call for vacatur of his previously valid sentence, (2) authorize a plenary resentencing, or (3) make reference to any statutory changes outside the FSA.

Turning next to the text of § 403 of the First Step Act, this section modifies 18 U.S.C. § 924(c)(1)(C), which is the statute providing the enhanced 25-year punishment for second or subsequent offenses involving firearms used in furtherance of drug trafficking crimes and crimes of violence.  Section 403 of the First Step Act states:

> (a) IN GENERAL.—Section 924(c)(1)(C) of title 18, United
> States Code, is amended, in the matter preceding clause

---

[8] The procedural mechanism for imposing a reduced sentence is provided in 18 U.S.C. § 3582(c)(1)(B), but as explained by the Fourth Circuit in <u>Collington</u>, 995 F.3d at 353, because § 3582(c)(1)(B) authorizes a district court to "modify an imposed term of imprisonment to the extent . . . expressly permitted by statute," the scope of this Court's authority to modify Pettaway's long-final sentence turns on the scope of the authority granted by the First Step Act.

(i), by striking "second or subsequent conviction under this subsection" and inserting "violation of this subsection that occurs <u>after a prior conviction under this subsection has become final</u>".

(b) APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense <u>has not been imposed as of such date of enactment</u>.

First Step Act § 403 (emphasis added). Notably, the limited retroactivity provision in § 403(b) reveals that, unlike § 404(b)'s broad retroactive application to long-incarcerated cocaine base offenders, the statutory modifications to the enhanced § 924(c)(1)(C) punishment does not apply to individuals sentenced prior to December 21, 2018, the First Step Act's effective date. Rather, appearing to have learned from <u>Dorsey</u> about the need to specify whether the newly reduced punishments apply to "pipeline" cases, § 403(b) clearly and unambiguously indicates that the statutory modifications do apply to "pipeline" defendants that have not yet been sentenced.[9]

Notwithstanding § 403(b)'s limited pipeline provision, at least two judges of this Court, as well as other judges from within the Fourth Circuit, have suggested or concluded that a district court is authorized to apply the reduced § 924(c)(1)(C) penalties when "imposing" a new sentence for cocaine base offenders that

---

[9] While not controlling because it is merely a heading, the Court notes that the title of § 403(b) references "pending cases," not cases where a final sentence was imposed years or decades earlier.

qualify for FSA retroactivity under § 404(b). See Jones v. United States, 431 F. Supp. 3d 740, 752 (E.D. Va. 2020) (concluding that § 403's modifications to the § 924(c)(1)(C) penalties apply when "imposing" a new sentence under § 404(b) because "it is as if [the defendant] has not been sentenced"); United States v. Day, 474 F. Supp. 3d 790, 800-01 & n.19 (E.D. Va. 2020) (finding that § 401(c) of the First Step Act, which is an "Applicability to Pending Cases" provision identical to § 403(b), does not preclude application of the newly reduced drug recidivist penalties adopted in § 401(a) because "imposing" a new sentence under § 404(b) "contemplates a sentencing process that begins essentially ab initio" meaning that the prior sentence "no longer 'has been imposed' as of December 21, 2018"); United States v. Sappleton, No. CR 01-284-PJM-3, 2021 WL 598232, at *4-5 (D. Md. Feb. 16, 2021) ("The Government is correct that section 401 is not itself retroactive, but [the defendant] is also right that if the Court imposes a new sentence pursuant to section 404, then it should apply the sentencing law of today, including [the statutory changes made in section 401]."); Babb, 2021 WL 2315459, at *15 (explaining that § 404 does not contain "limiting language to preclude the application of intervening legislative changes from which Defendant can benefit," and that "[p]ursuant to recent Fourth Circuit precedent . . . it is clear that if the Court imposes a new sentence pursuant to § 404, then it should apply present day sentencing law, and this

would include the effect of § 401 . . . even though § 401 is not
retroactive" (citations omitted)).[10]

This Court interprets the above-cited district court cases as
relying on two different theories to apply the non-retroactive
§ 924(c)(1)(C) sentencing relief during § 404 proceedings. First,
that general sentencing law, as recently interpreted by the Fourth
Circuit, supports application of the law in place at the time a
defendant is sentenced or resentenced.    Second, that the
"applicability to pending cases" language in § 403(b) of the First
Step Act renders non-retroactive statutory changes applicable when
a district court "imposes" a new sentence under § 404(b) of the
First Step Act because the original sentence becomes a nullity
that is no longer "imposed" as of the date the First Step Act was
enacted.   While these two theories are intertwined in application,
this Court addresses each in turn.

### 1. General Sentencing Law and/or Fourth Circuit Case Law does not Authorize § 924(c) reductions

While the Court finds the above cited district court cases
informative, for the reasons stated below, the Court ultimately
concludes that neither general sentencing law nor recent Fourth
Circuit cases authorize this Court to apply the newly-reduced

---

[10] As discussed below, the Fourth Circuit has yet to address whether
statutory changes unrelated to cocaine base quantity apply when imposing a
new sentence under § 404(b), but Babb and similar cases argue for the
extension of the Fourth Circuit's rulings applying intervening case law and
"recalculated" Guidelines when imposing a new sentence under § 404(b).

§ 924(c)(1)(C) <u>statutory</u> penalties during a First Step Act non-plenary resentencing.   Notably, unlike the sentencing discretion that the Fourth Circuit has expressly recognized as being available during a § 404 proceeding due to Congress's "silence" regarding changes to the Guidelines and intervening case law, statutory modifications are a different species that require Congressional authorization before they are applied retroactively.

A review of four recent Fourth Circuit cases is instructive when defining the breadth of this Court's resentencing authority, beginning with a case from March of last year, when the Fourth Circuit explained as follows:

> Ordinarily, a sentence of imprisonment is final and may not be modified once it has been imposed, except in narrow circumstances.  18 U.S.C. § 3582(c).  One such circumstance is when modification is "<u>expressly permitted</u> by statute."  18 U.S.C. § 3582(c)(1)(B).

> The First Step Act of 2018 expressly permits sentencing modifications. § 404, 132 Stat. at 5222. As relevant here, <u>the First Step Act makes retroactive certain provisions of the Fair Sentencing Act of 2010</u>, Pub. L. No. 111-220, 124 Stat. 2372 (2010).

<u>United States v. Jackson</u>, 952 F.3d 492, 495 (4th Cir. 2020) (emphasis added).  <u>Jackson</u> illustrates that § 404 is targeted at only one statutory change: retroactive application of the FSA.

The following month, the Fourth Circuit decided <u>United States v. Chambers</u>, 956 F.3d 667 (4th Cir. 2020), a case where the majority opinion acknowledged that the recently passed First Step Act resulted in district courts, "with little guidance, . . . being

asked to shape what a resentencing under the First Step Act looks
like." <u>Id.</u> at 671.   After reiterating the fact that strict
constraints on judicial discretion applicable to a different type
of statutory sentence modification are simply not applicable when
"imposing" a new sentence under the First Step Act, the Court
concluded that a district court has the authority to "recalculate"
<u>the advisory Guideline</u> range that will guide the imposition of a
new sentence and to apply intervening case law, explaining:

> Under § 404(b) of the First Step Act, sentencing courts
> may "impose a reduced sentence as if section 2 and 3 of
> the Fair Sentencing Act of 2010 . . . were in effect at
> the time the covered offense was committed."  First Step
> Act § 404(b).  The government contends that the "as if"
> clause limits the role of the sentencing court only to
> making statutory Fair Sentencing Act adjustments and
> precludes it from correcting Guidelines errors.  <u>To be</u>
> <u>sure, "as if" certainly directs the sentencing court to</u>
> <u>apply section 2 or 3 of the Fair Sentencing Act, and not</u>
> <u>some other section, or some other statute.</u>  In effect,
> it makes those sections of the Fair Sentencing Act
> retroactive.
>
> But what of the Guidelines?  Section 404(b) also
> expressly permits the court to "impose a reduced
> sentence."  Not "modify" or "reduce," which might
> suggest a mechanical application of the Fair Sentencing
> Act, but "impose."  And, when "imposing" a new sentence,
> a court does not simply adjust the statutory minimum; it
> must also recalculate the Guidelines range.  That is why
> the sentencing court in this case received a
> supplementary PSR, for example.
>
> Additionally, and unlike under § 3582(c)(2) and its
> corresponding policy statement (U.S.S.G. § 1B1.10),
> there is no limiting language to preclude the court from
> applying intervening case law. . . .
>
> Importantly, § 404(b) of the First Step Act expressly
> allows a court to impose a reduced sentence <u>in order to</u>

give retroactive effect to sections 2 and 3 of the Fair Sentencing Act.

Id. at 671-73 (footnotes and citations omitted) (emphasis added). Accordingly, while Chambers allows for Guideline errors to be corrected and permits the application of intervening case law, the emphasized sections above confirm that the sentencing Court is to retroactively apply "section 2 or 3 of the Fair Sentencing Act, and not some other section, or some other statute." Id. at 672 (emphasis added).[11]

In April of this year, after another year of district courts shaping the contours of First Step Act resentencings, the Fourth Circuit further highlighted a district court's expansive resentencing authority under the First Step Act, explaining:

[G]iven that the First Step Act was motivated by a belief that individuals prior to 2010 were sentenced under an unduly harsh statutory scheme, it makes sense that Congress would grant district courts greater sentencing authority to determine whether and how to reform individual sentences. And this Court has endeavored to interpret the First Step Act to avoid contravening that intent.

Accordingly, we both allow and require more of a sentencing judge in the First Step Act context than the § 3582(c)(2) context. First, district courts must accurately recalculate the Guidelines sentence range. Second, and relatedly, district courts must correct original Guidelines errors and apply intervening case law made retroactive to the original sentence. Third, the court must consider the § 3553(a) factors to determine what sentence is appropriate. Unlike sentence

---

[11] The dissenting view in Chambers concluded that the determination of the breadth of a district court's resentencing authority should be grounded in express permission from Congress, not Congressional silence. Chambers, 956 F.3d at 677 (Rushing, J. dissenting).

modification proceedings under § 3582(c)(2)—which limit use of the § 3553(a) factors to determining simply whether to reduce a sentence to within a predetermined range—we permit courts to use the § 3553(a) factors to more comprehensively shape sentencing decisions and even depart downward from the new Guidelines range.

As with initial sentencings, the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms.    Given that the district court must decide whether to impose a new sentence, the First Step Act naturally imports a more typical sentencing analysis than the expressly limited § 3582(c)(2) modification proceedings.

Thus, even if not a plenary resentencing, we ask courts to make substantially more robust resentencing decisions than in § 3582(c)(2) proceedings.    Such proceedings result, potentially, in a new sentence and therefore rest between an initial or plenary sentencing hearing and a limited modification.

United States v. Collington, 995 F.3d 347, 355 (4th Cir. 2021)

(footnotes and citations omitted).  Although the above excerpt is

lengthy, it is reproduced herein to highlight the fulsome

explanation of a district court's authority, to include step-by-

step instructions to be followed when "imposing" a reduced sentence

under § 404(b) of the First Step Act.  Noticeably absent from such

list is the instruction—or even the suggestion—that the district

court can modify the statutory punishment for firearms offenses or

other offenses based on statutory changes that Congress elected

not to make retroactive to defendants that have already been

sentenced.    While the sentencing authority recognized in

Collington allows a court to "even depart downward" from a non-

binding advisory Guideline range, it says nothing similar about deviating from an otherwise controlling statutory range. Id. at 355. In fact, what is said by the Fourth Circuit with respect to statutory changes is that "section 404(b) permits the district court to impose a sentence on defendants under the retroactively applicable Fair Sentencing Act reforms." Id. at 354 (second emphasis added).

Finally, in a case decided after Collington, the Fourth Circuit recently reiterated that if a district court finds that a defendant is eligible for a § 404 First Step Act reduction, the court is obligated to "engage in a brief analysis that involves the recalculation of the Sentencing Guidelines in light of 'intervening case law,' and a brief reconsideration of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Lancaster, 997 F.3d 171, 175 (4th Cir. 2021) (citations omitted).[12] Having once again defined the "steps" of the § 404(b) review process without any reference to applying non-retroactive statutory amendments outside of the FSA, the Fourth Circuit's Lancaster opinion further explained:

> Engaging in this analysis nonetheless leaves the court with much discretion, and the analysis is not intended to constitute a plenary resentencing. Moreover, the analysis is not intended to be a complete or new relitigation of Guidelines issues or the § 3553(a)

---

[12] A concurring opinion in Lancaster agreed that Circuit precedent mandated the application of intervening case law interpreting the Guidelines, but noted the emerging circuit split over such issue. Lancaster, 997 F.3d at 177-80 (Wilkinson, J., concurring).

> factors.  <u>Rather, the scope of the analysis is defined</u>
> <u>by the gaps left from the original sentencing to enable</u>
> <u>the court to determine what sentence it would have</u>
> <u>imposed under the Fair Sentencing Act in light of</u>
> <u>intervening circumstances</u>.  If, after conducting the
> analysis, the court determines that the sentence would
> not be reduced, then no relief under the First Step Act
> is indicated.

<u>Id.</u> (emphasis added) (citations omitted).

The Fourth Circuit's clear instruction is to "recalculate" the Guidelines taking into account "intervening" case law during a § 404 First Step Act non-plenary resentencing, with the updated Guidelines providing the Court with the applicable advisory "starting point" within the controlling statutory range.  A careful review of the above cases reveals a clear absence of precedent suggesting that Congress has also granted this Court authority to go back one step further, before it even begins the Guideline recalculation, and modify the <u>statutory</u> punishment that establishes the ceiling, and in some cases the floor, for the range of punishment authorized by Congress and the President (with the notable exception of the § 404(b) retroactive statutory change).[13]

---

[13] Relevant to the determination of how the Guidelines should be "recalculated," the Sentencing Reform Act sets forth a "special . . . background principle" that differs from the savings statute, requiring sentencing courts to apply the advisory Guidelines in effect as of the date of sentencing.  <u>Dorsey</u>, 567 U.S. at 275 (citing 18 U.S.C. § 3553(a)(4)(A)(ii)).  However, here, unlike the FSA "pipeline" analysis in <u>Dorsey</u>, there is not a recently adopted Guideline amendment governing § 924(c) offenses from which to draw favorable inferences regarding Congress's intent, but rather, the Guideline provision governing § 924(c) counts <u>remains unchanged</u> and simply defers to the applicable statutory mandatory minimum.  U.S.S.G. § 2K2.4(b).

Here, Pettaway was convicted of three § 924(c) counts, and no statutory error was committed when the sentencing judge applied then-existing law to impose the required minimum term of 57 consecutive years on such firearm counts.  The Fourth Circuit has recognized that the First Step Act's retroactive application of the FSA evidences a "more compassionate approach to drug sentencing."  Collington, 995 F.3d at 361.  However, the Fourth Circuit has not similarly recognized this Court's authority under the First Step Act to apply this approach to mandatory consecutive sentences for § 924(c)(1)(C) firearm offenses for individuals that (1) were subject to a valid final sentence at the time the First Step Act was passed, and (2) remain subject to a valid final sentence at the time they seek discretionary relief under § 404 of the First Step Act.  Cf. Dorsey, 567 U.S. at 280 ("[T]he ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced" (emphasis added)).  Accordingly, neither general sentencing law nor recent Fourth Circuit precedent authorize this Court to reduce Defendant's statutory mandatory minimum terms on the § 924(c)(1)(C) counts.

### 2. The "Applicability to Pending Cases" Provision in § 403(b) Does Not Render § 403 Amendments Applicable When "Imposing" a New Sentence Under § 404

"Statutory construction must begin with the language of the statute and the court should not look beyond that language unless

24

there is ambiguity or unless the statute as literally read would contravene the unambiguously expressed legislative intent gleaned from the statute's legislative history." United States v. Sheek, 990 F.2d 150, 152-53 (4th Cir. 1993). Additionally, when determining the meaning of a statute the Court does not limit its review to the disputed language, but also considers "the specific context in which that language is used, and the broader context of the statute as a whole." Yates v. United States, 574 U.S. 528, 537 (2015) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)). As excerpted above, the language chosen by Congress when enacting the First Step Act clearly indicates that § 403(b)'s changes to § 924(c)(1)(C) apply retroactively only to a subset of defendants that have not been sentenced as of December 21, 2018. Pettaway's sentence, however, was clearly imposed as of such date as it had been final for more than a decade when the First Step Act was passed.

Notwithstanding such fact, the defense contends that this Court's imposition of a new sentence under § 404(b) effectively nullifies the previously imposed sentence such that it "no longer 'has been imposed' as of December 21, 2018." Day, 474 F. Supp. 3d at 801 n.19; see ECF No. 89, at 8. While Day was decided without the benefit of recent appellate cases addressing this emerging area of the law, an unpublished Fourth Circuit case decided earlier this year reveals the panel majority's agreement

with the concept that if a previous sentence is vacated then the "applicability to pending cases" language found in § 403(b) and § 401(c) allows a district court to impose the newly reduced statutory punishments.   United States v. Bethea, 841 F. App'x 544, 550-52 & n.10 (4th Cir. 2021).   The Bethea court reached this conclusion notwithstanding the Government's invocation of the § 109 savings statute and textual analysis arguing for a contrary interpretation of the First Step Act.   Id.

Having the benefit of additional appellate case law, this Court reaches a conclusion that differs from Day and finds the non-precedential analysis in Bethea inapplicable to Pettaway's case.[14]   Importantly, Bethea involved a sentence vacated pursuant to 28 U.S.C. § 2255, not a non-plenary § 404 sentence review.   By contrast, Pettaway's sentence has not been vacated.   And Pettaway was not only lawfully sentenced as of December 21, 2018, but he remains lawfully sentenced today.   Because Bethea is distinguishable, this Court must perform its own statutory analysis, which turns on the text of the statute, but also includes

---

[14] Day includes an analysis under the "rule of lenity"; however, for the reasons explained herein, this Court finds that the lack of ambiguity renders the  rule of lenity inapplicable, at least with respect to defendants with valid sentences in place seeking discretionary relief under § 404.   In this Court's view, the general applicability of the word "impose" in § 404 should not be read to trump the very specific, and very narrow, retroactivity provision in the immediately preceding section of the very same Act.   This is especially so when the text immediately following the word "impose" in § 404 is directly linked to a specific statutory modification (cocaine base crimes) wholly unrelated to the statutory modification enacted by § 403 (gun crimes).

a review of: (1) recent out-of-circuit appellate cases squarely addressing whether Congress's "applicability to pending cases" language opens the door to statutory modification when "imposing" a new sentence under § 404(b) of the First Step Act; and (2) published Fourth Circuit precedent analyzing the word "impose."

Beginning with the text and interplay of § 403 and § 404, this Court finds that, at least in the context of a § 404(b) non-plenary review of a still-valid sentence, principles of statutory construction reveal the unambiguous meaning of § 403(b) of the First Step Act.    In stark contrast to the retroactive applicability of § 404(b), Congress expressly limited the retroactivity of § 403 of the First Step Act to cases where a sentence has not been imposed as of December 21, 2018.  Because it is undisputed that Pettaway was sentenced more than ten years earlier, the plain language of § 403 reveals that it simply does not apply to Pettaway.  The undersigned judge does "not deny that Congress could have" drafted § 403(b) more precisely to clearly limit its applicability to then-pending active pipeline cases (an intent suggested § 403(b)'s title); however, "most any statutory language can be made clearer" and "[u]nambiguity does not require perfection."    Bethea, 841 F. App'x at 557 (Quattelbaum, J., dissenting).    Moreover, as repeatedly discussed herein, when considered in the context of the FSA "pipeline" dispute resolved by Dorsey, this Court finds that Congress was exceedingly clear in

conveying its intent in the First Step Act's "applicability to pending cases" provisions.  Other district judges from within the Fourth Circuit have reached the same conclusion.  See United States v. Murphy, No. 4:03cr474, 2021 WL 462345, at *5 (D.S.C. Feb. 9, 2021) (discussing Bethea before indicating that "the undersigned is persuaded by the numerous district court cases finding that the non-retroactive amendments of § 401 should not be applied in a [§ 404] First Step Act resentencing" because doing so "absent intervening authority from the Fourth Circuit" would "give retroactive application to a statute where none was apparently intended" (citing United States v. Knight, No. CR 3:08-726-03, 2019 WL 3423524, at *1 (D.S.C. July 30, 2019); and United States v. Henderson, 399 F. Supp. 3d 648, 656 (W.D. La. 2019)); see also, United States v. Gibson, No. 4:06cr146, 2021 WL 5150679, at *7 (E.D. Va. Nov. 5, 2021) (briefly noting that "'unstacking' § 924(c) convictions is unavailable through § 404(b) of the FSA," but finding that such relief is available through a meritorious compassionate release motion).[15]

---

[15] The fact that a § 404 resentencing is non-plenary underscores the difference between this case and Bethea.  This Court acknowledges the recent amicus arguments made by the First Step Act's "lead sponsors" who were "'principal drafters' of § 401," as recounted in Bethea.  841 F. App'x at 551 n.9.  However the drafters' statements that were cited by the Fourth Circuit in Bethea address vacated sentences, not sentences being imposed during a § 404 non-plenary sentencing proceeding.  Id.  Moreover, this Court finds that the text of § 403, read in the context of § 404 and the prior "pipeline" circuit split that led to Dorsey, does not require a resort to legislative history, let alone comments made by legislators after the passage of the Act.

For completeness, the Court briefly reviews recent out-of-circuit cases squarely addressing the proper interpretation of § 403(b)'s text—though the Court acknowledges that such circuits authorize a far more limited § 404 sentence modification procedure than applicable in the Fourth Circuit. In March of this year, the Second Circuit rejected a defendant's contention that the reduced § 401 punishments are applicable "when a district court reduces a sentence pursuant to Section 404(b) of the First Step Act." United States v. Bryant, 991 F.3d 452, 456 (2d Cir. 2021). Although the defendant in Bryant made a slightly different statutory interpretation argument than that addressed herein, the Second Circuit applied the "applicability to pending cases" provision to bar relief because the defendant's sentence "was imposed in 2007, long before the date of the First Step Act's enactment." Id.; see also United States v. Eldridge, 2 F.4th 27, 40 (2d Cir. 2021) (finding that "for the purposes of Section 403(b), a sentence is 'imposed' when the district court orally pronounces it").[16]

---

[16] In Eldridge, the Second Circuit expressly reserved "whether Section 403(a) of the First Step Act applies at a defendant's resentencing following vacatur of a defendant's original erroneous sentence, where the First Step Act was enacted after the original sentencing but before resentencing," noting a circuit split on the issue. Eldridge, 2 F.4th at 41 n.17 (second emphasis added) (citing Bethea). However, as indicated herein, Pettaway comes before this Court in a distinct procedural posture as his sentence has not been vacated. Moreover, the fact that this Court has discretion to deny Pettaway's § 404 motion even after finding that he committed a "covered" offense further underscores the fact that his valid sentence was "imposed" as of December 2018 and remains "imposed" as of today.

After Bryant was decided, a divided panel of the Sixth Circuit reached the same conclusion, but extended its finding to recently vacated sentences, explaining:

> As judges, we assume that Congress says what it means and means what it says. That is why statutory interpretation begins with the text. FNU Tanzin v. Tanvir, 141 S. Ct. 486, 489 (2020). When Congress reduced the scope of 18 U.S.C. § 924(c)'s extreme penalties, it said how the amendments apply to past crimes. They apply for a defendant on whom "a sentence for the offense has not been imposed as of" December 21, 2018. First Step Act § 403(b) (codified at 18 U.S.C. § 924 notes). As of that day, a sentence had been imposed on Kenneth Jackson, Jr. That we later vacated his first sentence does not alter Jackson's status on the day the First Step Act became law.

United States v. Jackson, 995 F.3d 522, 523 (6th Cir. 2021).[17]

Largely consistent with the above out-of-circuit cases, the Fourth Circuit has interpreted the plain language of § 401(c) and § 403(b) in precedential opinions as being "triggered" as soon as a district court orally imposes a sentence, rejecting claims by defendants that a sentence is not "imposed" until it has been reviewed on appeal and finalized. See United States v. Jordan,

---

[17] A dissenting opinion in Jackson agreed with the majority in Bethea that a sentence vacated after passage of the First Step Act authorized application of § 403 during a de novo resentencing. Id. at 527 (Moore, J., dissenting); see also United States v. Mathis, No. 3:14cr16, 2021 WL 4504688, at *3 (W.D. Va. Oct. 1, 2021) (finding Bethea "persuasive and instructive" in a case where, on direct appeal, the defendants had certain convictions vacated and it was undisputed that "a complete resentencing is required"). This Court does not reach the issue of how a vacated sentence would impact the statutory analysis, but rather, finds that Congress's change to § 924(c)(1)(C) is best interpreted to retroactively apply to a small class of defendants, which at a minimum does not include defendants that were lawfully sentenced as of December 21, 2018, and are seeking the discretionary imposition of a new sentence through the non-plenary review of a still valid sentence.

952 F.3d 160, 173 (4th Cir. 2020) ("Section 403(b) requires, for application of the Act, that a sentence be 'imposed' after its enactment, not that it be 'finally imposed,'" and based on the fact that the adjacent § 403(a) "did use finality as a marker," there is "no warrant for treating the omission of finality language in § 403(b) as an oversight."); United States v. Brunson, 968 F.3d 325, 335 (4th Cir. 2020) (holding that "the plain meaning" of § 401(c)'s text "on its face restricts applicability to defendants whose sentences had not yet been 'imposed' at the time of the Act's enactment, and a sentence is 'imposed' when it is pronounced by the sentencing court"), cert. denied, 141 S. Ct. 1398 (2021), reh'g denied, 141 S. Ct. 2663 (2021).  While the non-precedential Bethea opinion indicates that the calculus changes when a previously "imposed" sentence is vacated, when, as here, the previously imposed sentence remains valid and in place, the precedential opinions in Jordan and Brunson support, and arguably dictate, the finding that Pettaway's still valid sentence was effectively "imposed" when it was announced by this Court in 2007. See Jordan, 952 F.3d at 174 ("Congress decided to extend the more lenient terms of § 403(a) of the First Step Act to some but not all pre-Act offenders, with the date of sentencing in the district court drawing the line between those who are covered and those who are not." (quotation marks omitted)).

For these reasons, this Court finds no "clear direction" from Congress, express or implied, that grants authority to apply the newly reduced § 924(c)(1)(C) statutory punishments set forth in § 403 of the First Step Act.    Cf. Dorsey, 567 U.S. at 275 (explaining that "before interpreting a new criminal statute to apply its new penalties to a set of pre-Act offenders" district courts must "assure themselves that ordinary interpretive considerations point clearly in that direction").    Rather, when considered in the context of the FSA history, this Court finds that § 401 through § 404 of the First Step Act authorize this Court to retroactively modify the statutory punishments for only one historical ill—the gross disparity caused by the uneven statutory treatment of cocaine base and power cocaine that was entrenched in federal sentencing law prior to 2010.

Other disparities may still exist in the federal sentencing context, though the broad sentencing discretion recognized in cases like Collington and Lancaster provide district courts with great flexibility to address such disparities when operating within the controlling statutory range.    However, Congress has not broadly authorized this Court to retroactively apply all recent statutory modifications during a § 404 non-plenary resentencing, and in fact, has not even granted this Court the authority to retroactively apply § 401 or § 403's reduced statutory punishments, a finite list of statutes modified in the very same legislation

that retroactively extended the FSA to decades-old cocaine base cases. Congress could easily have made all of the First Step Act's prospective statutory changes retroactive to every federal prisoner incarcerated under the harsher statutory schemes, or alternatively, could have elected to provide such benefit only to the subset of defendants qualifying for a § 404 First Step Act review. However, Congress did neither. Rather, the text of § 401 and § 403 of the First Step Act did what the FSA failed to do in 2010: it ensured that the statute directly addressed then-pending "pipeline" cases involving recently convicted defendants. In doing so, Congress utilized unambiguous statutory language that turns on whether a sentence has been imposed as of the date the First Step Act took effect. The fact that § 401 and § 403 appear adjacent to a section of the First Step Act that expressly authorizes a retroactive statutory modification for cocaine base offenses further reveals that Congress did not expressly, or implicitly, extend the same retroactivity to defendants with long-final § 924(c)(1)(C) sentences (or long-final § 841 recidivist sentences), but instead drew the line based on imposition of sentence.

This Court does not suggest that such result is satisfying when considered from an equitable perspective; however, the Court's finding appropriately reflects the role of this Court in a government divided into three different branches. Moreover,

sentencing equity is not always achievable because "disparities,
reflecting a line-drawing effort, will exist whenever Congress
enacts a new law changing sentences (unless Congress intends re-
opening sentencing proceedings concluded prior to a new law's
effective date)." Dorsey, 567 U.S. at 280.

In summary, while this Court makes no finding regarding the
effect of a prior sentence being vacated, Congress has not directly
or implicitly authorized this Court to modify § 924(c)(1)(C)
sentences during the discretionary "imposition" of a new sentence
under § 404(b) of the First Step Act. See United States v. Waite,
12 F.4th 204, 215-17 & n.11 (2d Cir. 2021) (declining to remand a
still-pending case to permit resentencing in light of the newly
adopted First Step Act because the defendant was validly sentenced
by the district court prior to the effective date of the Act,
noting that "even if we were to hold that § 403(a) of the First
Step Act applies on remand after a defendant's original sentence
has been vacated[,] . . . there is clearly no vacated sentence" in
the case before the court).  Pettaway, who is not a "pipeline"
defendant, or a defendant with a vacated sentence, remains subject
to a 57-year consecutive sentence on his three § 924(c) Counts.

## V. First Step Act Relief

As discussed above in Part II, the Court finds that Pettaway
is eligible for discretionary sentencing review under § 404 of the
First Step Act.  Additionally, as discussed above in Parts III and

IV, Pettaway's newly calculated advisory Guideline range is 360 months to life, plus 57 years consecutive. The Court is required by statute to impose a 20-year mandatory minimum sentence on the CCE count, and no less than 57 years consecutive on the § 924(c) counts.

Considering the controlling statutory punishment, the revised advisory Guideline range, as well as all relevant § 3553(a) factors, the Court finds that it is appropriate to reduce Pettaway's sentence pursuant to the authority granted by § 404(b) of the First Step Act. As explained below, the Court finds that the statutory minimum sentence of 77 years "is sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]."[18] 18 U.S.C. § 3553(a).

In determining that the mandatory minimum sentence is appropriate, the Court considers the quantity of drugs attributed to Pettaway (a quantity that is no longer at the top of the Guideline sentencing table following multiple retroactive Guideline amendments), Pettaway's evidence revealing his efforts toward rehabilitation and parenting his son from prison (including completing drug education, anger management, the "challenge

---

[18] While the Court acknowledges the appeal behind Defendant's contention that 57 consecutive years for possession of three firearms during the same drug conspiracy is a draconian punishment that diverges greatly from sentences imposed for identical conduct in current criminal prosecutions, it is the lowest sentence authorized by law.

program," and acting as a mentor),[19] and the fact that if Pettaway committed his offenses today the advisory Guidelines would recommend a "low-end" sentence of 47 years imprisonment (30 years on the CCE count and 17 years consecutive on the § 924(c) counts). While the Government is correct that the PSR evidences violence committed by Pettaway fifteen years ago, the record as a whole still supports a 20-year sentence on the CCE count, which constitutes a downward variance from the 30-year low end of the corrected advisory Guideline range. Such downward variance is supported in part by Defendant's rehabilitation, but is predicated primarily on the fact that this Court must reimpose 57 years consecutive on the § 924(c) counts. Cf. Dean v. United States, 137 S. Ct. 1170, 1176-77 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count.").

The Court's finding that a 77-year sentence is appropriate is driven by the § 3553(a) parsimony principle requiring a sentence "no[] greater than necessary" to achieve the statutory sentencing goals. Having considered the record of the case, as supplemented by the parties' recent submissions, the Court does not identify a valid basis for imposing a sentence in excess of 77 years

---

[19] The fact that Pettaway exhibited such rehabilitative behavior during the last seven years notwithstanding his dismal chances for release further supports the mitigation case he presents now.

imprisonment, and places significant weight on recent factual developments (Defendant's conduct while incarcerated) as well as legal developments (Congress's decisions to reduce the punishments for both cocaine base offenses and § 924(c) offenses).  The fact that a 77-year sentence represents a Guideline "variance" does not undermine its appropriateness when considering that: (1) such sentence, in effect, approaches a "life" sentence; (2) the firearms attributed in this case were all possessed during the course of the same drug conspiracy; (3) unlike other conspiracies the undersigned judge has presided over, Pettaway was not charged with "discharging" a firearm in support of drug activities; (4) Congress has recently indicated that the 25-year consecutive § 924(c)(1)(C) punishment is excessive when applied in the same prosecution to a first time § 924(c) offender; and (5) § 404 of the First Step Act promotes a more compassionate approach to drug sentencing, particularly in cases like Pettaway's where the drug weight calculation was driven by cocaine base.

The "dramatic degree" to which Pettaway's § 924(c) sentences "exceed what Congress now deems appropriate" offers support for the finding that a Guideline sentence of 87 years (30+57) would be greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).  McCoy, 981 F.3d at 288; see also United States v. Redd, 444 F. Supp. 3d 717, 723-24 (E.D. Va. 2020) (discussing the "gross disparity" between the § 924(c)(1)(C) stacked sentences

the defendant received after committing a string of bank robberies and the sentence he would receive after the passage of § 403 of the First Step Act). If the Court had further discretion, it might conclude that a sentence less than 77 years was appropriate,[20] and the Court would welcome Congress's expansion of district courts' discretion to consider reductions for all prisoners serving sentences predicated on the now-outdated § 924(c)(1)(C) 25-year consecutive punishments. However, until such expanded authority is granted by Congress or recognized by controlling circuit precedent, the Court finds that it lacks the authority to impose a sentence less than that imposed here today.

## VI. Conclusion

For the reasons explained above, Defendant's First Step Act motion is **GRANTED,** and his term of imprisonment is hereby **reduced to a total term of 77 years imprisonment.** This term of consists of **240 months on Count Two** (the mandatory minimum), **240 months on Count Three,** and **120 months** on each of **Counts Nine, Ten, and**

---

[20] Any further sentence reduction in this case would require a more searching balancing of the § 3553(a) sentencing factors, many of which are unfavorable to Pettaway, as noted by the original sentencing judge's comments regarding the risk Pettaway appeared to pose to the public at the time he was sentenced. Moreover, assuming, for the sake of argument, that the Court had the authority to reduce Defendant's consecutive § 924(c) term to a total of 17 years as the defense requests, Defendant would not likely qualify for a variance on the CCE count in light of all of the relevant § 3553(a) factors, with the "sentencing package" doctrine underlining this Court's collective consideration of the interplay of all counts when "imposing" the updated sentence. Notably, the violence Pettaway engaged in during the course of the conspiracy, as punctuated by his subsequent efforts to harm an adverse witness, would be notable considerations weighing strongly against a sentence of less than 47 years (30+17) in this case.

Eleven, all to be served concurrently.   In addition to this concurrent term of 240 months, and as mandated by statute, Pettaway shall serve the following **consecutive sentences on the § 924(c) counts: 25 years on Count 5, 25 years on Count 6,** and **7 years on Count 7.**   The Court finds that, as limited by the applicable statutory mandatory minimums, such sentence is appropriate after consideration of the § 3553(a) factors, including the need to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public, and to avoid unwarranted sentencing disparities.

As there have been no challenges to the other sentencing provisions previously imposed in this case, **all other provisions of the judgment dated April 25, 2007, shall remain in effect.**[21]

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to counsel for the Defendant and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

/s/ ⁄⁄⁄

Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November **29**, 2021

---

[21] The imposition of a reduced sentence in this case does <u>not</u> modify the ruling in Case No. 4:09cr17 that the sentence imposed in that case shall run concurrently with the undischarged term of imprisonment in this case.